**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CRYSTAL GALE GREENE,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 4:14-cv-182-TLW |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
|     **Defendant.** ) | |

## OPINION AND ORDER

Plaintiff Crystal Gale Green seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income under the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 7). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 34-year old female, applied for benefits under Titles II and XVI on September 2, 2011. (R. 153-59, 160-69). Plaintiff alleged a disability onset date of May 15, 2009. (R. 153, 160). Plaintiff claimed that she was unable to work due to diabetes and back problems. (R. 192). Plaintiff's claims for benefits were denied initially on October 17, 2011 and on reconsideration on February 10, 2012. (R. 73, 74, 81-88; 76, 77, 94-99). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 100-01). The ALJ held the hearing on January 14, 2013. (R. 24-72). The ALJ issued a decision on February 7, 2013, denying benefits and finding plaintiff not disabled. (R. 9-23). The Appeals Council denied review, and plaintiff appealed. (R. 1-5; dkt. 2).

**The ALJ Hearing[1]**

The ALJ held a hearing on January 14, 2013. (R. 24-72). The ALJ walked plaintiff through a detailed series of questions about herself and her impairments. (R. 32-52; 61-62). He confirmed that plaintiff lives with her mother, grandmother, husband, and daughter; graduated high school, receiving "special help" in reading and math; she can read a newspaper and understand it, and she is able to give and receive the correct change at the grocery store. (R. 33). Plaintiff received a vo-tech certificate in floral arranging, but did not work in that field. (R. 33-

---

[1] Plaintiff focuses her complaints on the ALJ's handling of her diabetes; therefore, the Court will focus its summary and discussion on this issue.

34). Plaintiff also has an active CNA certificate. (R. 34). The ALJ then reviewed plaintiff's work history with her, verifying what she did with each employer listed over the past fifteen years. (R. 34-38).

Next, the ALJ asked plaintiff to give him a "list of the reasons why [she] felt [she could not] go back to work." (R. 38). The ALJ explained that he already compiled a list from the record of things that he wanted "to talk to [her] about, ask questions, let [her] explain things, give [him] details." Id. However, he stressed that what he wanted from her at that point was to ensure that the "physical or mental conditions" that she felt were most important and were preventing her from working "get[ ] on [his] list." (R. 38-39). Plaintiff responded that the conditions that prevent her from working were her diabetes, her back, her legs, her feet, and "I stay tired." (R. 39).

The ALJ then began to question plaintiff extensively about her diabetes. (R. 39-45). Plaintiff stated that she is insulin dependent, and that her blood sugar reading the morning of the hearing was 350. (R. 39). She told the ALJ that 350 was high for her, but then said that her readings can run between 550 and 600. (R. 40). The ALJ clarified this with her, and plaintiff stated that 600 is a high reading for her. Id. She claimed to be compliant with her diabetic medications and diet. Id. Plaintiff also stated that she had been through diabetic education, and when the ALJ asked, "[a]nd it [plaintiff's blood sugar] still runs that high?" Id. Plaintiff answered "yes." Id. She was not using an insulin pump, and plaintiff's doctors had not discussed getting her one. Id.

At this point, the ALJ shared his difficult personal journey with diabetes with plaintiff to warn her of the dangers of ignoring high blood sugar levels such as she reported, and urged her to get her blood sugar levels under control. (R. 41). The ALJ resumed his questions and

established that plaintiff had never been hospitalized due to her diabetes. Id. Plaintiff claimed her diabetes caused blurry vision, swelling in her feet and legs if she stood too long, and fatigue. Id. She also confirmed that she needs to use a restroom frequently, but denied needing protective adult undergarments. (R. 41-42).

The ALJ asked plaintiff to go into more detail about her vision. (R. 42). She said that when her sugar "gets really high," her vision becomes blurry, and when her blood sugar drops "really low," she "start[s] shaking really bad." Id. She stated that "low" blood sugar for her was a reading of 70, which the ALJ pointed out was within normal limits. Id. Plaintiff insisted that although 70 is within the normal range, when her blood sugar reaches 70, she has a hypoglycemic reaction. Id. Plaintiff confirmed that her current eyeglasses did not correct her vision to 20/20, but that she recently visited an eye doctor and ordered a new pair, which does correct her vision to 20/20. Id. The ALJ left the record open for two weeks to receive those records. (R. 27; 440-52).

Plaintiff was unsure what a tremor was, but after the ALJ explained it to her, she confirmed that she experiences "a slight shaking of [her] hands or feet," stating that when her sugar is "really high, [her] fingers will start shaking on their own." (R. 42-43). This happens two or three times per week. (R. 43). She confirmed that it was difficult to grip things like knives, forks, pens, or pencils when her fingers are shaking. Id. On further questioning, plaintiff also confirmed that she experiences numbness in her fingertips. (R. 43-44). The ALJ next asked plaintiff about her right knee, and she stated that it "gives out a lot" on her, and that she has "a lazy leg." (R. 44). She does not use a cane or a walker. (R. 45). Plaintiff said her doctors explained to her that the "tissue between [her] knees … is decaying." Id. The ALJ asked if her

4

doctors used the term "neuropathy" when talking about her knee, and she said yes. Id. Plaintiff admitted that no one has told her she has organ damage due to diabetes. (R. 47).

The ALJ continued his detailed line of questioning with plaintiff about her left knee, GERD, shortness of breath, high blood pressure, and back problems. (R. 45-47).

Next, the ALJ moved into a line of questioning about what plaintiff is able to do. (R. 48-52). Plaintiff said she is able to bend and touch her knees, but not her toes; she can squat, but needs assistance, such as holding onto a chair, to get back up; she can walk up and down a flight of stairs holding the rail; and she can reach in every direction except overhead. (R. 48). None of plaintiff's doctors have restricted how much weight she can lift and/or carry. (R. 48-49). However, plaintiff said she could only lift a gallon of milk without experiencing pain in her back. (R. 49). She can sit approximately fifteen minutes before she needs to stand, and the ALJ noted that plaintiff had already stood once or twice during the hearing at that point. Id. Plaintiff can stand approximately fifteen minutes before needing to sit back down. Id. She stated that she could walk "around a block maybe if I exercise." Id.

Plaintiff said the medication Glucophage caused her tongue to swell and her airway to close up, and she did not do anything other than take medication to attempt to relieve her symptoms. (R. 50).

Plaintiff's activities of daily living include doing the dishes, dusting the furniture, making the beds, doing the laundry, cooking, shopping, taking care of her eight-year-old daughter, watching television, reading for pleasure, visiting with family and friends, and participating in Girl Scouts as a troop leader. (R. 50-51).

Plaintiff said she has trouble sleeping due to diabetes; however, she admitted to sleeping for eight hours on a "typical" night. (R. 51-52). She does not nap during the day, and does not have problems getting along with others. Id.

**The ALJ's Decision**

The ALJ found that plaintiff was insured under Title II through February 7, 2013. (R. 14). Plaintiff had not engaged in any substantial gainful activity since May 15, 2009, her alleged disability onset date. Id. The ALJ found that plaintiff had severe impairments of "diabetes; right heel spur; and minor arthritis in the right knee." Id.

In support of his findings of severe impairments, the ALJ stated that plaintiff had "a history of diabetes (Exhibits 1F, 2F, 5F, 8F, 14F, 16F, and 17F[2])"; "X-ray of the right foot on October 15, 2012, revealed a heel spur (Exhibit 11F)"; and "X-ray of the right knee on December 3, 2012, showed minor arthritic changes (Exhibit 10F, page 19)." Id. The ALJ noted that plaintiff testified to depression and anxiety. However, the ALJ found no evidence that plaintiff "ever sought or received treatment from a mental health professional," and he noted that she did not take any medication for depression or anxiety. Id. Based on this evidence, the ALJ determined that plaintiff's depression and anxiety "represent no more than a slight abnormality and would have only a minimal affect on [her] ability to perform work-related activities and thus, are nonsevere." (R. 14-5).

Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing. (R. 15). The ALJ placed specific emphasis on Listing 1.02 (pertaining to major

---

[2] Plaintiff's September 6, 2012 eye examination record notes that blood sugar readings average 97-200. (R. 400). Her diet is uncontrolled, and her blood sugar "just depends on what she eats." Id.

dysfunction of a joint due to any cause). Id. After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> lift and/or carry 20 pounds occasionally or 10 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday (all with normal breaks) (Light work is defined in 20 CFR 404.1567(b) and 416.967(b)) except she is limited in squatting and climbing; occasional bending, stooping, crouching, crawling; operating foot controls with the left lower extremity; and pushing/pulling; avoid work requiring fine vision (such as proofreading); must have easy access to a restroom; and must alternate position from time to time.

(R. 15).

The ALJ found that plaintiff was capable of performing past relevant work as a courtesy booth cashier, ticket seller, and cashier/checker. (R. 17). The ALJ made an alternative step five finding that plaintiff was capable of performing the requirements of the occupations of rental clerk, call-out operator, and charge account clerk. (R. 18).

As a result of finding plaintiff could perform past relevant work as well as the alternative occupations presented at step five, the ALJ determined that plaintiff is not disabled. Id.

## ANALYSIS

On appeal, plaintiff raises a single error: that the ALJ "failed to consider objective medical evidence regarding Plaintiff's severe impairment of diabetes." (Dkt. 12 at 3).[3] Plaintiff argues that the ALJ's finding that her claims of blood sugar levels of 550-600 are not credible is unsupported by substantial objective evidence. Id. at 7. She further argues, "one must not suffer blood sugar readings above 550 for an individual to suffer work-related limitations from

---

[3] Although plaintiff's opening brief also appears to fault the ALJ for improperly developing the record, plaintiff concedes in her reply brief that she did not raise this issue; therefore, the Court deems it waived and will not address it. See (dkt. 16 at 1).

7

diabetes. Moreover, there is no appellant burden requiring Plaintiff to show her blood sugar levels rise to that extreme." Id.

Plaintiff claims that there is "sufficient and *objective* medical evidence on which a reasonable fact finder could conclude that Plaintiff's testimony of her complaints regarding her blood sugar levels are supported." Id. (emphasis added). The Commissioner responds that plaintiff fails to "identify any specific limitations that should have been included in the RFC—but were not—due to her diabetes." (Dkt. 15 at 5).

While plaintiff directs the Court to reported subjective symptoms in the record, such as complaints of blurred vision, excessive thirst, fatigue, hypoglycemia, foot ulcers, "slow healing," a skin lesion, and pain, plaintiff does not point to any objective medical evidence that the ALJ failed to consider. See (dkt. 12 at 7-8; dkt. 16 at 2).

Due to the structure of this particular ALJ decision, and because credibility and the ALJ's RFC findings are directly linked, the Court finds it necessary to address the credibility portion of the ALJ's decision in order to dispose of this allegation of error. "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009). This is particularly true on the issue of pain. See Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (holding that, when objective medical evidence shows a pain producing impairment, the ALJ was required to consider the assertions of severe pain and to "decide whether he believe[d them]." (citing Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987)).

In evaluating credibility, complaints of disabling pain are analyzed using the three-step analysis found in Luna, 834 F.2d at 163-4.[4] Those steps are "(1) whether [plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [plaintiff's] subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [plaintiff's] pain is in fact disabling." Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995) (citing Luna, 834 F.2d at 163-64) (other internal citations omitted).

The evidence an ALJ should consider under a Luna pain evaluation includes "a claimant's persistent attempts to find relief for h[er] pain and h[er] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems, … daily activities, and the dosage, effectiveness, and side effects of medication." Luna, 834 F.2d at 165-66. However, "so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility," he need not make a 'formalistic factor-by-factor recitation of the evidence.'" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[C]ommon sense, not technical perfection, is our guide." Id. Further, As discussed by the Commissioner, the ALJ is not required to include limitations for impairments or symptoms that are not supported by the record. Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009).

As an initial matter, the Court notes that the ALJ stated that he carefully considered "all of the evidence," and in reviewing the record and his decision, it is apparent that he did. See

---

[4] In her reply brief, plaintiff misconstrues the application of Luna, attempting to reduce it to a two prong test for overall credibility. (Dkt. 16 at 2). However, the ALJ's credibility finding is proper, as discuss above.

Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, … is to take a lower tribunal at its word when it declares that it has considered a matter.").

Here, in connection with his discussion of plaintiff's severe impairments, the ALJ listed several record exhibits that detail her diabetic history. (R. 14). The ALJ then moved to her RFC, which in itself, specifically addressed several limitations associated with diabetes: limited squatting and climbing; occasional bending, stooping, crouching, and crawling; operating foot controls with her left foot; avoiding rough, uneven surfaces; avoiding fast and/or dangerous machinery; avoiding work requiring fine vision; must have easy access to a restroom; and must alternate position from time to time. (R. 15).

The ALJ accurately summarized plaintiff's hearing testimony, and then discussed his credibility determination, explaining how the record refuted plaintiff's claims of disabling pain and impairments. (R. 16). Concerning plaintiff's back pain, the ALJ noted that plaintiff "took no prescription pain medication (Exhibit 12E)," that there was "no radiographic evidence of an impairment to [plaintiff's] back," and that a physical examination on December 6, 2010 "revealed full range of motion of the spine, no muscle spasms or tenderness, 5/5 strength in all extremities, and negative straight leg raising (Exhibit 3F)." (R. 16; 237; 298-9).

Regarding her diabetes, the ALJ said that plaintiff was not compliant with her diabetic diet and exercise recommendations, was not checking her blood sugar levels, denied foot ulcers, and on October 15, 2012, plaintiff's "diabetes was noted to be uncomplicated." (R. 16; 384-5; 405; 411). Further, the ALJ stated that the record contained no evidence of diabetic neuropathy. (R. 16). The ALJ noted the inconsistency between plaintiff's testimony of a high blood sugar reading of 550-600 and a report to a physician of readings of a minimum of 120 and a maximum

of 300. He also noted that plaintiff admitted that she did not adhere to the recommended diet and exercise routine. (R. 16; 422).[5]

The ALJ also relied on plaintiff's activities of daily living to support his credibility and RFC findings. (R. 16-7). He noted that plaintiff takes her daughter to and from school; helps her daughter with homework; cooks; does laundry and dishes; shops; and sweeps. (R. 16). Plaintiff visits with friends, uses the computer, attends church on Wednesday and Sunday. Id. On September 4, 2012, plaintiff stated she was exercising 30 minutes a day. (R. 16-7). Plaintiff is a Girl Scout leader. The ALJ determined that "[t]his range of activities shows an ability to perform light work activity." (R. 17).

"Credibility determinations are peculiarly the province of the finder of fact," and their determinations are not to be set aside "when supported by substantial evidence." Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, these findings "should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). If the ALJ identifies the specific evidence on which he relies, then this requirement is satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence." Id. Thus, the Tenth Circuit permits a court to apply a "common sense" approach to the review of an ALJ's credibility determination. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012). "Technical perfection" is not required. Id.

The ALJ properly and thoroughly considered plaintiff's diabetes in deciding her credibility and formulating her RFC. Further, he sufficiently discussed the Luna factors related to

---

[5] This record contains several of the subjective complaints that plaintiff alleges that the ALJ failed to consider. (R. 422). The Court believes the ALJ's specific citation of this record shows that he considered all of the evidence.

11

plaintiff's pain, tied those factors to evidence in the record, and concluded that although plaintiff's pain would be noticeable, it would not prevent her from successfully performing work related duties. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying plaintiff's claims for benefits is AFFIRMED.

SO ORDERED this 30th day of September, 2015.

_____
T. Lane Wilson
United States Magistrate Judge